In the United States District Court
For the District of Kansas

Cory Deshawne Cline,                    )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )        Case No. 22-cv-3136-TC-TJJ
                                        )
Kansas City, Kansas Police Department, et. al.)
                                        )
                                        )
            Defendants.                 )
_____

# Motion to Dismiss
# and Memorandum in Support

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Unified Government of Wyandotte County/Kansas City, Kansas and Eric Ibanez, move to dismiss Plaintiff Cory Cline's Amended Complaint.  Defendants submit the following memorandum in support of their motion.

## Introduction

Plaintiff Cory Deshawne Cline brings this suit under 42 U.S.C. Section 1983 as his claims allege violations under the 4th and 14th amendments.  His claims center around the affidavit for a search warrant, search warrant, and execution of that warrant which subsequently resulted in his arrest and prosecution.  (Amended Complaint, Doc. 20, pgs. 6-7. Doc. 24, pg. 1).

# Facts

On January 29, 2020, Officer Eric Ibanez applied for and obtained from a District Court Judge, a search warrant for the premise of 604 ½ Lowell Ave., Kansas City, Kansas, which Plaintiff attached to his complaint. (Doc. 20 at 21-24, 28).  The Search Warrant authorized the seizure of the following items: Methamphetamine, Drug Paraphernalia, United States Currency, and Records of narcotics transactions, an documents which prove legal occupancy including, but not limited to, writings, books, checkbooks, and back account statements, magazines, records, tax receipts, utility receipts, rent receipts, post marked envelopes, photographs, and keys, all of which tend to show the identity of person in ownership, dominion, or control of said premises." (Id. at 28).

Information included in the affidavit for search warrant was obtained from an unnamed neighbor complainant as well as a named witness, Marlon Fields who was stopped with methamphetamine coming from 604 ½ Lowell Ave on January 28, 2020.  (Id. at 21-22).  The unnamed complainant did provide his name, address and phone number to law enforcement for the complaint, but Officer Ibanez did not name him in the affidavit.  (Id. at 21). The complainant believed there was drug activity at 604 ½ Lowell due to the high amounts of vehicle traffic coming and going from the residence, along with an unusual odor which the complainant believed was coming from the residence.  (Id at 21-22).

Fields provided a recorded statement to Officer Passinese, which was summarized in the affidavit.  (Id. at 22).  Fields stated that he had purchased methamphetamine from the residence approximately 7 times since December 2019.  (Id at 22).  He knew the seller to be a white female named Amanda, knew Amanda's boyfriend to be a bald, black male, and had seen other users and sellers in the residence while there on different occasions.  (Id. at 22).  He further provided that Amanda and her boyfriend stayed in the basement which they accessed through the main level and had access to the entire residence of 604 ½ Lowell Ave.  (Id. at 22).

Officer Ibanez included in the affidavit three paragraphs based on his experience as a police officer summarizing his knowledge that persons involved in drug trafficking receive United State Currency, keep records of drug transactions, and possess narcotics paraphernalia.  (Id at 23).  Two at issue are as follows:

> "Based on my experience as a police officer, I have knowledge that many persons involved in the trafficking of illegal drugs receive United States Currency proceeds during the sale of narcotics.  *This is substantiated by the aforementioned controlled purchase conducted by Narcotics Officers*. Additionally, United States currency is often evidence of such illegal drug sales and in some cases can be seized for forfeiture.  Officers may locate United States currency at the residence that can be attributed to drug sales, and in some cases can locate original *"buy money"* after inspecting currency serial numbers."  (Id at 23) (emphasis added).

> "Based on my experience as a police officer, I have knowledge that many persons involved in the trafficking of illegal drugs often keep records of these transactions *which include, but are not limited to*, books, checkbooks, bank account records, electronic storage devices, *cell*

*phones*, photographs, writing, and ledgers….” (Id. at 23) (emphasis added).

In Counts I and IV, Plaintiff alleges Eric Ibanez perjured himself in the affidavit for search warrant with the inclusion of the sentence: “This is substantiated by the aforementioned controlled purchase conducted by Narcotics Officers.” (Id. at 9, Doc. 24, pg. 1). Plaintiff further alleges the inclusion of that statement and reference to “buy money” was used to “invade [his] cousin’s home” and “strengthen the credibility of his affidavit”, support the state’s case in 20CR129, and “support the continuation of [his] detention, loss of liberty, and loss of property.” (Doc. 20, pgs. 9-10, Doc. 24, pg. 1).

In Count II and Plaintiff’s “Monell” claim, Plaintiff alleges Judge John Doe who signed the search warrant knew or should have known that the elements of the affidavit were insufficient to issue a search warrant. (Id. at 6, 11-14, 17-18). The Wyandotte County Judges have a custom or policy issuing and authorizing search warrants without probable cause, use of unreliable tipsters, use of perjury in affidavits, unreturned search warrants, perjury in search warrants, and duplicate copies of search warrants not given to persons. (Id. at 17-18).

On January 30, 2020, Officers executed the warrant at 604 ½ Lowell Ave. (Id at 27, 29). Plaintiff includes a copy of the Search Warrant and Inventory, Receipt, and Return to Search Warrant with his complaint, which indicates the date of January 29, 2020 as the date issued, and July 30, 2020 as

the date it was electronically filed with the District Court Clerk.  (Id. at 27-28).

As indicated on the return, property seized during the execution of the warrant

include: "methamphetamine, marijuana, drug paraphernalia, cell phone."  (Id.

at 27).  Officer Ibanez signed and dated January 31, 2020, the Inventory,

Receipt, and Return to Search Warrant, indicating: "No one being present, I

left a copy of this warrant and a receipt for the above-described property at the

place described in the warrant.  In addition, the above property was secured as

best as possible by; KCKPD".  (Id.).

Regarding Count III of Plaintiff's cause of action, the search warrant

does not list cell phones as a thing to be seized.  (Id. at 7, 28).  Plaintiff again

alleges perjury on behalf of Eric Ibanez, when the officer stated plaintiff was

not present to leave a copy of the search warrant.  (Id. at 15, 27).  Cline was

detained during the search.  (Id. at 15).   Plaintiff also alleges the search

warrant was never returned to the magistrate.  (Id. at 15).

Detective Andrew Seal prepared an Affidavit for Application for

Warrant dated January 31, 2020, for the persons of Sidney Butler

(Interference with law Enforcement and Aggravated Burglary) and Corey

Cline (Possession of Methamphetamine) which Plaintiff previously filed with

the Court under this case caption.  (Doc. 11-2 at 1-2, Exhibit 1)[1].  Detective

---

[1] The Court may take judicial notice of official public District Court Records. *See Delaney v. Thompson*, No. 18-3037-SAC, 2019 WL 1317467, at *3 (D. Kan. Mar. 22, 2019)*See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)(court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand); *Shoulders v. Dinwiddie*,

Seal again summarized the information provided by the unnamed neighbor complainant as well as the statement provided by Marlon Fields in the Affidavit for Warrant.  (Id at 1).  He also summarized the result and inventory of the execution of the search warrant on January 30, 2020 which included "2 black digital scales found in the southwest bedroom, bed side table, 1 red digital scale found in the basement bedroom under the bed, 1 broken glass drug pipe found in the southwest bedroom on the bed, 2.3 grams of methamphetamine found in the southwest bedroom identified as Cory Cline's bedroom, Positive TruNarc test done by Ibanez".  "Basement desk top which contained: 1 digital scale, 2 baggies containing 13.4 grams of an unknown rock like substance. Negative TruNarc test. Torn empty plastic baggies. 2 baggies containing 4.3 grams of marijuana. Positive field test by Ibanez". (Id. at 1-2). Amanda Howard and Corey Kline [sic] were taken into custody inside 604 ½ Lowell at the time the warrant was executed.  (Id. at 2).  Detective Seal did not reference a controlled narcotics purchase, nor did he reference Cline's cell phone in the Affidavit for Arrest Warrant.  (Id. at 1-2).

## Standard of Review under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient

---

No. CIV-06-890-C, 2006 WL 2792671 (W.D. Okla. Sept. 26, 2006)(court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter*, 79 F. App'x 383 (10th Cir. 2003)(unpublished opinion)(finding state district court's docket sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting B*ell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[I]n examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. The court accepts all of the plaintiff's well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *Warnick v. Cooley*, 895 F.3d 746, 750-51 (10th Cir. 2018).

"Although pro se complaints are liberally construed, the district court must still ensure compliance with federal pleading requirements." *Barnett v. Allbaugh*, 740 F. App'x 653, 653 (10th Cir. 2018) (citing *White v. Colo.*, 82 F.3d 364, 366 (10th Cir. 1996)), *cert. denied*, 139 S.Ct. 1451 (2019). "Thus, a district court must dismiss a pro se complaint when it lacks enough facts to state a claim facially plausible." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Iqbal* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.,* at 557.

# Argument and Authority

I.   **Officer Ibanez is entitled to Qualified Immunity on each of Plaintiff's claims.**

"Qualified immunity shields federal and state officials from [liability for] money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A.   **Counts I and IV (Claims regarding the Affidavit)**

The Fourth Amendment governs Cline's claims regarding the statements made by Officer Ibanez in the Affidavit for Search Warrant as well as the seizure of his cell phone.  Regarding both Affidavits for Search Warrant and Arrest Warrant, the doctrine established in *Franks v. Delaware* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) applies.  Affiants seeking search warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing. *Id* at 171, 98 S.Ct. 2674, *see also Kapinski v. City of Albuquerque*, 964 F.3d 900 (10th Cir. 2020).  The plaintiff must first show the false statements or omitted information was "material" in that its inclusion would have vitiated probable cause for issuing the warrant.  *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir. 2020). Second, he must demonstrate that Officer Ibanez

8

acted with the requisite mental state recklessness in omitting exculpatory information or including false information.  *Id.* at 905.

## Materiality

### Search Warrant Affidavit:

Plaintiff alleges Eric Ibanez perjured himself in the affidavit for search warrant with the inclusion of the sentence: "This is substantiated by the aforementioned controlled purchase conducted by Narcotics Officers."  (Id. at 9, Doc. 24, pg. 1).  Plaintiff further alleges the inclusion of that statement and reference to "buy money" was used to "invade [his] cousin's home" and "strengthen the credibility of his affidavit", support the state's case in 20CR129, and "support the continuation of [his] detention, loss of liberty, and loss of property." (Doc.  20, pgs. 9-10, Doc. 24, pg. 1).

The language at issue was in a summary paragraph Officer Ibanez used to establish a nexus to search for and seize United States Currency, which was listed in the Search Warrant (Doc. 20, pg. 28):

> "Based on my experience as a police officer, I have knowledge that many persons involved in the trafficking of illegal drugs receive United States Currency proceeds during the sale of narcotics. *This is substantiated by the aforementioned controlled purchase conducted by Narcotics Officers.* Additionally, United States currency is often evidence of such illegal drug sales and in some cases can be seized for forfeiture.  Officers may locate United States currency at the residence that can be attributed to drug sales, and in some cases can locate original *"buy money"* after inspecting currency serial numbers." (Id at 23) (emphasis added).

While Defendant agrees there are no facts indicating that a "controlled

purchase" occurred at the residence prior to the affidavit being created, it appears to be consistent with a "copy and paste" type of clerical error rather than an intentional or malicious act, considering Officer Ibanez included no information regarding a controlled purchase earlier in the affidavit. Further, the reference to "buy money" did not indicate there was "buy money" in this residence; just that in the case of a controlled purchase, buy money can be located after inspecting serial numbers. More importantly, after removing the specific statement "*This is substantiated by the aforementioned controlled purchase conducted by Narcotics Officers*" and reference to "buy money", the remaining information in the affidavit is still sufficient to support probable cause. "Probable cause to issue a search warrant exists when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

Officer Ibanez included information from a source that although not named in the affidavit, was not completely anonymous since he had the witness' name and contact information. (Doc. 20, pg. 21). That information was corroborated with the car stop of Marlon Fields on January 28, 2020, observed coming from the residence, who admitted possession of methamphetamine which he bought from 604 ½ Lowell not only on that occasion, but seven occasions since December 2019. (Id. at 22). Given the proximity in time of those

events, those facts would lead a reasonable officer to believe there was evidence of the crime of possession of methamphetamine the intent to distribute within the residence of 604 ½ Lowell Ave.  It's also important to note that no "United States Currency" was seized during the execution of the search warrant.  (Doc. 20, pg. 27).  Because the inclusion of the sentence regarding a "controlled purchase" or "buy money" was not material in supporting probable cause, no constitutional violation occurred.

**Arrest Warrant Affidavit:**  Concerning Cline's allegations that the false or perjured statement was used to support the state's case in 20CR129 and used to support the continuation of his detention and loss of liberty and property, it's important to review the Affidavit for Arrest Warrant.  Detective Seal never included a reference to a "controlled purchase" or "buy money" in Cline's Affidavit for Arrest.  (Doc. 11-2, pg. 1-2).  Cline was located in the residence during the execution of the warrant along with Amanda Howard.  Fields' statement indicated Amanda Howard and her boyfriend stayed in the basement.  Methamphetamine and paraphernalia were located in the southwest bedroom identified as Cory Cline's bedroom.  These facts were sufficient to tie Cline to the methamphetamine and paraphernalia found within the bedroom, providing probable cause for his arrest warrant and continued detention.  Again, because Detective Seal did not even reference a "controlled purchase" or "buy money" in the Arrest Affidavit, it is clear that the use of that language in the Affidavit for Search Warrant was not material in supporting probable cause for Cline's

arrest, and therefore, no constitutional violation occurred.

### Recklessness

To establish recklessness, "there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020). Cline fails to plead any facts (that are not conclusory) that indicate Officer Ibanez doubted the truth of the information included in the affidavit or doubted that the affidavit supported probable cause, and therefore he fails to establish this prong.

### Defendant Ibanez did not violate clearly established law.

Even if Officer Ibanez' actions in preparing the search warrant affidavit was sufficient to support a Fourth Amendment claim, he is entitled to qualified immunity because no clearly established law prohibited his conduct. A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S.Ct. at 308 (quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)). While there does not have to be a case directly on point, existing precedent must place the constitutional question "'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court has emphasized that clearly established law should not be defined at a "'high level of generality.'" *City of Escondido v. Emmons*, 139

12

S.Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018)).

Instead, it must be "'particularized' to the facts of the case." *White*, 137 S.Ct. at

552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see Saucier v.*

*Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear

to a reasonable officer that his conduct was unlawful in the situation he

confronted.").

No reasonable officer would have believed the affidavit for search

warrant or arrest warrant in this case contained false or omitted information

material to probable cause.  See *United States v. Cardall*, 773 F.2d 1128, 1133

(10th Cir. 1985) ("When a warrant has issued, the legal sufficiency of the

underlying affidavit has already been determined by the magistrate, and the

magistrate's determination is entitled to credence.").  Because the inclusion of

the sentence regarding a "controlled purchase" was not material to establishing

probable cause and because the remaining portion of the affidavit supported

probable cause for the search of 604 ½ Lowell Ave., there was no clearly

established law that such an error would have vitiated the search warrant.

B.    **Count III (Claims regarding the cell phone and Search**
      **Warrant Return)**

Because the Fourth Amendment also applies to the claims Cline makes in

Count III, the same analysis for qualified immunity (whether there is a

Constitutional or statutory violation and if so, whether there was clearly

established law) is used.

The first issue Cline raises in Count III is that his cell phone was seized despite it not being listed in the search warrant. (Doc. 20, pg. 7, 15). The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant is overly broad if it does not contain sufficiently particularized language that creates a nexus between the suspected crime and the items to be seized. *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010); citing *Campos,* 221 F.3d at 1147; *United States v. Grimmett,* 439 F.3d 1263, 1271 (10th Cir.2006).

Here, despite the search warrant not specifically listing "cell phones" as items to be seized, the Search Warrant did authorize the seizure of "Records of narcotics transactions, and documents which prove legal occupancy including, but not limited to, writings, books, checkbooks, and back account statements, magazines, records, tax receipts, utility receipts, rent receipts, post marked envelopes, photographs, and keys, all of which tend to show the identity of person in ownership, dominion, or control of said premises." (Doc. 20 at 28). Previously in the Affidavit for Search Warrant, Officer Ibanez provided a nexus to the "Records of narcotics transactions…" with the following information:

> "Based on my experience as a police officer, I have knowledge that many persons involved in the trafficking of illegal drugs often keep records of these transactions *which include, but are not limited to*, books, checkbooks, bank account records, electronic storage devices, *cell phones*, photographs, writing, and ledgers…." (Id. at 23) (emphasis added).

The list of items which could be "Records of narcotics transactions" is not exclusive.  Because he referenced "cell phone" as an example in the Affidavit, it is clear he sufficiently complied with the particularity requirement of the Fourth Amendment.

Additionally, the Court in *United States v. Le* noted that "the general rule," where executing officers exceed the scope of a warrant, "is that 'only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant.' " *United States v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999); citing *Hargus*, 128 F.3d at 1363 (quoting *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 875 (10th Cir.1992)). In the vast majority of cases, "a search is not invalidated merely because some things are seized that are not stated in the warrant." *Id*. "This is particularly true when the non-specified items are not admitted into evidence against the defendant." *Id*.  Plaintiff pleads no facts indicating that any evidence obtained from the cell phone was used in the prosecution against him.  Further, Detective Seal never references the cell phone in his Affidavit for Arrest Warrant. (Doc. 11-2, pg. 1-2).

Based on these circumstances it is clear that Officer Ibanez did not violate Cline's Fourth Amendment rights in the seizure of his cell phone and further the law was not clearly established that the seizure of the phone was unlawful.

Cline also complains that the failure to immediately file the search

warrant and return and failure to provide Cline personally a copy of the search warrant at the time of the execution of the warrant is a violation of K.S.A. 22-2506.  Even so, Officer Ibanez is entitled to qualified immunity on these claims because he did not violate clearly established law.  K.S.A. 22-2506(a) provides:

> "A search warrant shall be executed within 96 hours from the time of issuance. If the warrant is executed the duplicate copy shall be left with any person from whom any things are seized or if no person is available the copy shall be left at the place from which the things were seized. Any warrant not executed within such time shall be void and shall be returned to the court of the magistrate issuing the same as "not executed."" Kan. Stat. Ann. § 22-2506

 If items are seized, K.S.A. 22–2512(a) provides:

> "The officer seizing the property shall give a receipt to the person detained or arrested particularly describing each article of property being held and shall file a copy of such receipt with the magistrate before whom the person detained or arrested is taken." Kan. Stat. Ann. § 22-2512

Kansas law does not require a law enforcement officer to provide a copy of the affidavit to an individual after executing a search warrant.  Cline's copies of the search warrant and return that he included with his Amended Complaint (Doc. 20, pg. 28) indicate an electronic filing date of July 30, 2020.  The statute does not proscribe a time period indicating when such records must be filed, just that they are "filed".  And therefore, there was no violation of this law.

Additionally, the "Inventory, Receipt, and Return to Search Warrant" shows that "no one being present", a copy of the warrant and receipt were left at the residence at the completion of the warrant execution, January 31, 2020. (Doc. 20, pg. 27).

In *State v. Parker*, the Kansas Court of Appeals determined the officers complied with both K.S.A.2014 Supp. 22–2506 and K.S.A.2014 Supp. 22–2512 when they left a copy of a search warrant along with a custody receipt listing the items seized at the residence even when the defendant in that case requested it in person.  *State v. Parker*, 355 P.3d 721, (Kan. Ct. App. 2015).  See also *State v. Forsyth,* 2 Kan.App.2d 44, 46, 574 P.2d 241 (Kan. Ct. App. 1978) (finding the failure to give a copy of the receipt to the defendant for the items taken is a technical irregularity under K.S.A. 22–2511, and therefore the evidence seized thereunder was admissible unless the defendant demonstrates prejudice from the procedural violation).  Any failure by Officer Ibanez to provide a copy of the search warrant and receipt to Cline personally, did not violate clearly established law and therefore he is entitled to qualified immunity.

## II.     Count II and Plaintiff's *Monell* claims should be dismissed against the Unified Government of Wyandotte County/Kansas City, Kansas.

Both Count II and the "Monell" claim of Cline's complaint are directed at Judge John Doe, "the issuing judge of the search warrant" and Judge John Doe's

employer.  (Doc. 20, pg. 11-14, 17-18).  It's clear that when Cline named "Wyandotte County Kansas City, KS" as a Defendant in this matter, it was in reference to his belief that it is the "the municipality/employer of Judge John Doe".  (Doc. 20, pg. 5).  The Unified Government of Wyandotte County/Kansas City, Kansas is not the employer of Judge John Doe and has no authority over the policy of the Wyandotte County District Court.

In Kansas, district court judges are state officials. K.S.A. 25-2505(b).  See also *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004*), see also Sigg v. Dist. Court of Allen Cty., Kan.*, No. 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. March 20, 2012) (district court judge is a state official and official capacity claims against judge for money damages are barred).  Section 1, Art. 3 of the Kansas Constitution vests administrative authority over all courts in the state to the Kansas Supreme Court.  Additionally, while the County may set budget, it has no authority over policy of the Wyandotte County District Court Judges.  (96-4 Kan. Atty. Gen. Op. Feb. 2, 1996, attached as Exhibit 2).

To establish municipal liability under *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658 (1978), a plaintiff must show: (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993). A municipality cannot be held liable "solely because its employees inflicted injury on the plaintiff." *Bryson v. City of*

*Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010). Rather, a municipality's "own unconstitutional or illegal policies" can supply the basis for liability. *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998).

With respect to the first element, "a municipality may be held liable only for injuries resulting from the execution of one of its policies or customs." *Jantzen v. Hawkins,* 188 F.3d 1247, 1259 (10th Cir. 1999). A plaintiff must therefore "identify 'a government policy or custom' that caused the injury." *Schneider v. Grand Junction Police Dept.,* 717 F.3d 760, 769 (10th Cir. 2013) (quoting *Monell,* 436 U.S. at 691-92, 694). Plaintiff fails if he merely shows "general deficiencies;" he must instead "identify a specific deficiency that was obvious and closely related to his injury ... so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *City of Canton,* 489 U.S. at 385).

He must then show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* Courts "will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers." *Olsen,* 312 F.3d at 1317-18.

Plaintiff can establish no Monell liability against the Unified Government

because the Unified Government of Wyandotte County/Kansas City, Kansas does not employ Judge John Doe.  Further, because it has no authority over the District Court's policies or customs, it cannot be responsible for any injuries caused by the District Court Judges.

Even if any part of the Monell claim was directed in reference to the Unified Government as the employer of Officer Ibanez, Cline still fails.  Based upon the probable cause analysis of the affidavits above, neither Plaintiff's constitutional nor statutory rights were violated by the officers.  And therefore, the Unified Government cannot be liable for those claims.

Additionally, given the search warrant return form (Doc. 20, pg. 27) outlines K.S.A. 22-2506 for an officer to easily be able to comply with state law, it is clear the Unified Government has not enacted or maintained a policy, custom, or practice with deliberate indifference to the law.

Plaintiff's allegations do not sufficiently allege any acts or omissions by the Unified Government or its officers to state a claim for deliberate indifference, let alone any facts giving rise to an inference that such acts or omissions were the result of Unified Government training or supervision policies or a failure to implement such policies. Without more, all claims made against the Unified Government should be dismissed.

## Conclusion

Based on the foregoing, all claims should be dismissed against Defendant Unified Government of Wyandotte County/Kansas City, Kansas and Defendant Eric Ibanez because Plaintiff fails to state a claim upon which relief can be granted.

s/Casey Meyer
Casey Meyer, #22130
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
Municipal Office Building
701 N. 7th Street
Kansas City, Kansas 66101
(913) 573-5060
(913) 573-5243 (facsimile)
Email: cmeyer@wycokck.org
*Attorney for Defendant Unified
Government and Officer Eric
Ibanez*

## Certificate of Service

I certify that on September 6, 2022, I electronically filed this motion to dismiss and memorandum in support with the clerk of the court by using the CM/ECF system, and also mailed a copy of the foregoing to Cory Cline at the address listed in the system.

s/Casey Meyer
Casey Meyer

18